No. 35,188

J. ASHFORD MANKA, Administrator With the Will Annexed, *de bonis non,* of the Estate of F. W. Martin, Deceased, *Appellee,* v. THE MARTIN METAL MANUFACTURING COMPANY et al., *Appellants.*

(113 P. 2d 1041)

Opinion filed June 7, 1941.

*Glenn Porter, Getto McDonald, Dwight S. Wallace* and *William Tinker,* all of Wichita, for the appellants.

*John Madden* and *John Madden, Jr.,* both of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendants' demurrer to plaintiff's petition was overruled, and they appeal, the question presented being whether the alleged cause of action is barred by the statute of limitations.

The petition was filed on June 28, 1940, and allegations necessary to be noted are summarized.

F. W. Martin died in June, 1935, leaving a last will which was duly admitted to probate on June 26, 1935, and Thomas W. Martin and George Martin, brothers of F. W. Martin, and Bernice B. Martin, his widow, were appointed as executors. On July 21, 1936, George W. Martin resigned, and on December 7, 1937, Bernice B. Martin and Thomas W. Martin were removed by order of the probate court and plaintiff was appointed administrator with the will annexed *de bonis non.* At the time of his death F. W. Martin was the president of defendant, The Martin Metal Manufacturing Company, hereafter referred to as the corporation, and the owner of more than six hundred shares of its stock. Upon his death, Thomas W. Martin succeeded to the presidency and was familiar with the status of the corporation and knew the shares of stock held by various stockholders and the shares owned by his brother, F. W. Martin, and where the same were kept. It was alleged that Thomas W. Martin unlawfully and feloniously purloined and carried away the shares which belonged to F. W. Martin, and, with other officers of the corporation, caused the purloined shares to be transferred on the books of the corporation from the name of F. W. Martin to his own name; that Thomas W. Martin knew the stock belonged to the estate of F. W. Martin but concealed the fact of the ownership and illegal transfer; that Thomas W. Martin illegally voted, as his own, at stockholders' meetings, the shares of stock belonging to the estate of F. W. Martin, and was thereby enabled to control the corporation until he died. No dates as to the purloining of the stock or of the death of Thomas W. Martin are set out. The defendant, Ruth E. Martin, is the widow of Thomas W. Martin and the executrix of his estate, and now is illegally voting the stocks. Plaintiff further alleged that George W. Martin, a brother of Thomas W. Martin and F. W. Martin, is the record holder of one hundred shares of the

corporation which belonged to F. W. Martin at the time of his death, but the shares are not in the possession of George W. Martin and he denies he is the owner, and plaintiff alleges that the shares are in possession of Ruth E. Martin individually or as executrix. The dates when the stock was transferred to George W. Martin or when Ruth E. Martin acquired possession are not shown.

Plaintiff further alleged that Louis Henry Martin another brother of Thomas W. Martin and F. W. Martin, after the death of the latter purloined 150 shares of the stock owned by F. W. Martin and caused the same to be transferred on the books of the corporation to the name of Louis Henry Martin; that Louis Henry Martin died testate on March 26, 1938, and Thomas W. Martin was on May 7, 1938, duly appointed as executor of his estate, and with full knowledge of the felonious taking and illegal transfer of the 150 shares of stock failed to inventory the stock in his estate, and, with other officers of the corporation, caused the shares to be transferred on the books of the corporation to himself, and that the same are now in the possession of Ruth E. Martin, either individually or as executrix of the estate of Thomas W. Martin, deceased, or in the possession of his daughters, Eleanor E. Martin or Carolyn G. Martin Kennedy, defendants in the action, and that all of that stock has been and is being illegally voted at stockholders' meetings; that all of the stock belongs to the estate of F. W. Martin, deceased, and should be turned over to the plaintiff administrator. Other allegations are that Thomas W. Martin purloined a large number of shares of other stockholders, and that Ruth E. Martin, either individually or as executrix of his estate, is in possession thereof; that as a result of the illegal acts above alleged, the shares of stock which rightfully belong to the estate of F. W. Martin are being unlawfully used and illegally voted and there are persons in control of the corporation and its management by illegal methods; that since the death of F. W. Martin the corporation has paid no dividends, and is being mismanaged; that Thomas W. Martin wrongfully withdrew large sums of money for various stated purposes and as a result of the mismanagement the earnings of the corporation have been decreased and an accounting should be had from the date of the death of F. W. Martin up to the present time; that by reason of the foregoing the estate of F. W. Martin has suffered great loss and damage and plaintiff has no adequate remedy unless the court will appoint a competent person to take charge, etc. His prayer was for the appointment of

a receiver; that defendants be required to turn over all books, records, etc., of the corporation, and to make a complete accounting, that they be required to surrender the stock, and that they be restrained from transferring any stock belonging to the estate of F. W. Martin, etc.

The demurrer specifically raised the question the action was commenced too late and was barred by the statute of limitations. This demurrer was overruled and defendants appeal. It seems clear that plaintiff may maintain his action against the defendant corporation for an accounting only on the theory that he is, or stands in the position of, a stockholder of the corporation. Whether he occupies that position depends on his being able to maintain his alleged cause of action against the individual defendants as successors in interest of Thomas W. Martin who is charged with purloining the stock which belonged to plaintiff's intestate.

Before proceeding to consider the arguments made in the brief, it may be well to note that Thomas W. Martin and Louis Henry Martin are charged with having unlawfully and feloniously "purloined" certain shares of the defendant corporation. The verb "purloin" may mean either to wrongfully appropriate or to steal. By reason of the argument made by the appellee, generally we shall use the word as meaning to steal. Although in connection with many of the allegations no dates are given, the following does appear: F. W. Martin died about June 15, 1935, his will was admitted June 26, 1935, and George W. Martin and Thomas W. Martin, brothers, and Bernice B. Martin, widow, were appointed executors of his estate and duly qualified. George W. Martin resigned July 21, 1936, and on December 7, 1937, Thomas W. Martin and Bernice B. Martin were removed by order of the probate court and plaintiff was appointed as administrator with the will annexed de bonis non of the estate of F. W. Martin. The reason for the removal is not alleged. Then follows the charge that F. W. Martin owned 605 shares of stock of the defendant corporation and thereafter, seriatim, that Thomas W. Martin purloined an unknown number of shares and caused them to be transferred on the books of the corporation to his own name, and that thereafter he voted the shares, no dates being given; that 100 shares were placed in the name of George W. Martin, no date being given; that Louis Henry Martin purloined 150 shares which were transferred to his name on the books of the corporation, no dates being given; that Louis Henry Martin died

testate on March 26, 1938, and on May 7, 1938, Thomas W. Martin was appointed and duly qualified as executor of his estate. It thus appears that all the unlawful acts were committed prior to March 26, 1938. As has been noted, the action was commenced June 28, 1940, or at least two years and three months after the commission of the unlawful acts.

The general substance of appellant's contention is that the action is one for taking and detaining personal property and for the specific recovery of that property, or for relief on the ground of fraud, and there being no allegation the fraud was not discovered until within a period of two years prior to the commencement of the action, the action is barred by G. S. 1935, 60-306, *third.*

The substance of appellee's contention that his action was commenced in time is that Thomas W. Martin was guilty of larceny; that a thief obtains no title, and no statute of limitations runs in his favor; that Thomas W. Martin is estopped to take advantage of his own wrong, he holds the stock in trust for the rightful owners, and that his executrix, widow and children, the individual defendants, are not purchasers for value without notice and stand in his shoes.

Under the allegations of the petition, there is no necessity for referring to any authorities dealing with the rights of purchasers of stolen property. The petition does charge a larceny of the stock, but the commission of the crime charged concerns the state. Plaintiff in this action is interested only in the civil consequences. When the stock was stolen, as alleged, it was transferred on the books of the corporation and was voted by Thomas W. Martin. Lacking any allegation to the contrary, we must assume that after the death of F. W. Martin the corporation filed with the secretary of state its various annual returns showing a complete list of the stockholders with the post-office address of each and the number of shares held by each (G. S. 1935, 17-701 [9]) and hence every person interested was put on notice as to the shares held. (See *In re Estate of Mc-Farland,* 118 Kan. 534, syl. ¶ 2, 235 Pac. 832; *Smith v. Rector,* 135 Kan. 326; 10 P. 2d 1077; *Kittell v. Smith,* 136 Kan. 522, 524, 16 P. 2d 538; *Causemaker v. DeRoo,* 153 Kan. 648, 113 P. 2d 83; *Henne v. Wood,* 153 Kan. 673, 677, 113 P. 2d 98.) When the stock was unlawfully taken and converted to his use by Thomas W. Martin, by having it transferred to himself and by voting it, the plaintiff had two remedies open to himself. He could treat the matter by waiving

the wrong and bringing action for the conversion and to recover the value, or he could bring replevin to recover the stock. He chose to do the latter, his petition charging that the successors in interest of Thomas W. Martin should turn the stock over to him and the prayer asking for that specific relief.

As to the recovery of stolen property, our attention is not directed to any Kansas case directly in point, but there is little conflict in the authorities generally as to a situation such as is here presented. Where the thief conceals the property, he may not plead the statute of limitations in his own defense, but where he holds the property openly and notoriously, so that the owner has a reasonable opportunity of knowing its whereabouts and of asserting his title, the statute begins to run; this, not on the theory the thief is to be protected, but because of the failure of the owner to make timely assertion of his claim. (See 17 R. C. L. 94, 34 Am. Jur., 109; 2 C. J. 287, 2 C. J. S. 885, § 239. Also, see note *Lightfoot v. Davis,* 29 L. R. A., · n. s., 119, 120, *infra.*) Where there is concealment of the property, so that a fraud may be said to have been committed, in which event the usual rules applicable to discovery of the fraud would apply, the statute begins to run from the discovery. We need not pursue this phase of the matter, however, for here the petition charges the converse of concealment. A fair reading of the petition is that the larceny took place prior to the time plaintiff was appointed as administrator in December, 1937, and a necessary interpretation is that it took place and was disclosed prior to the death of Louis Henry Martin in March, 1938, or over two years before the action was commenced.

On the question of the statute of limitations, appellee seeks to justify the ruling of the trial court by directing our attention principally to *Hinze v. Hinze,* 76 Kan. 169, 90 Pac. 762, and *Lightfoot v. Davis,* 198 N. Y. 261, 91 N. E. 582, 29 L. R. A., n. s., 119, special weight being given the last case. The Hinze case dealt not with theft, but with misappropriation of money by a husband acting as his wife's agent, and where he concealed from his wife the fact he had taken in his own name instead of hers title to real estate purchased with the wife's money. The Lightfoot case dealt with theft of Kansas school bonds and the collection of the principal thereof, all of which was concealed by the thief and was discovered only after the death of the thief, when in an examination of his effects, a stolen memorandum in connection with the bonds was found and his books

disclosed he had collected the bonds. The element of concealment in both of the above cases clearly distinguishes them from the case at bar.

While we are of opinion that the gist of the instant action is to recover specific property, if the petition should be construed as one seeking damages for fraud, the result would be the same insofar as the statute of limitations is concerned. If the purloining of the stock be considered as a fraud on the estate of F. W. Martin, the petition discloses that it was perpetrated over two years before the action was commenced. We do not overlook the allegation with reference to the shares transferred to Thomas W. Martin that he—

"Well knew that said stock belonged to the estate of his deceased brother, F. W. Martin, but nevertheless concealed said fact of ownership and illegal transfer."

That allegation discloses there was a transfer of the stock, which was hardly concealment. But given its greater potency, it is not an allegation that plaintiff made discovery within two years prior to bringing his action, and under repeated decisions of this court was not sufficient to avoid the bar of the statute of limitations. (See, for example, *Malone v. Young,* 148 Kan. 250, 264, 81 P. 2d 23, and cases cited.)

Appellee seeks to avoid the effect of the statute of limitations by contending that Thomas W. Martin is estopped to take advantage of his own wrong; that the corporation is a trustee for its shareholders; that Thomas W. Martin was a trustee holding the stock for his deceased brother's estate, and upon the stock being purloined and transferred on the books of the corporation to Thomas W. Martin, the law would raise a trust *in invitum* out of the transaction. In support *Lightfoot v. Davis,* supra, and cases therein are principally relied on. By reason of concealment of the crime in the Lightfoot case, a different situation was presented than exists here. Viewed from the angle that a trust relation was created, it must have arisen from the acts of Thomas W. Martin. So considered, the gist of the action is that the taking of the stock was in fraud of the rights of the true owner and that fraud is the gravamen of the cause of action stated. In such case plaintiff's action must have been commenced, at the latest, within two years from the date of discovery of the fraud (G. S. 1935, 60-306, *third*). There are allegations showing the fraud occurred over two years before the action was commenced, but there is no allegation it was discovered within

the two-year period, rather the converse is true, and consequently the action was commenced too late (*City of Clay Center v. Myers,* 52 Kan. 363, 35 Pac. 25). If it be assumed that a trust was created, and that the acts of Thomas W. Martin did constitute him a trustee for the beneficiaries of his brother's estate, and that the statute of limitations would not commence to run until the trustee repudiated the trust, then it is to be observed that under the allegations of the petition, all the acts of Thomas W. Martin, after taking the stock, were in repudiation of that trust. Apparently from the date of his appointment as administrator, and certainly prior to the death of Louis Henry Martin, plaintiff was in full possession, or in position so to be, of all the facts. Under the view most favorable to the plaintiff, the statute commenced to run as against the plaintiff upon the repudiation of the trust, and by lapse of time he is barred from maintaining an action on that theory. (See *Malone v. Young,* supra, and *Herthel v. Barth,* 148 Kan. 308, 81 P. 2d 19.)

We are of opinion the trial court erred in overruling the demurrer. Its ruling is reversed and the cause remanded with instructions to sustain the demurrer.